**David VAN BUREN, Plaintiff,**

**v.**

**OHIO DEPARTMENT OF PUBLIC SAFETY, et al., Defendants.**

**Case No. 2:11–cv–1118.**

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 6, 2014.

Emily Jane Lewis, Law Office of Emily J. Lewis, Dublin, OH, for Plaintiff.

Alexis K. Chancellor, Ohio Attorney General's Office, Grove City, OH, Rory P. Callahan, Timothy M. Miller, Ohio Attorney General's Office, Columbus, OH, for Defendants.

### OPINION AND ORDER

EDMUND A. SARGUS, JR., District Judge.

Plaintiff David Van Buren brings this reverse racial discrimination and retaliation case against his employer the Ohio Department of Public Safety and two of its directors. This matter is before the Court on Defendants' Objection to the Magistrate Judge's Discovery Order (ECF No. 56) and Defendants' Motion for Summary Judgment (ECF No. 57). For the reasons set forth below, the Court **OVERRULES** Defendants' Objection and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

### I.

Since May 1990, Plaintiff has been employed by the Ohio State Highway Patrol, which is a division of Ohio's Department of Public Safety. From 1990 until 1999, he worked at the Cambridge Post of the Highway Patrol as a Trooper and a K9 Handler. In August 1999, a Sergeant position became available at the Highway Patrol's Zanesville Post and Plaintiff was promoted to that position.

In this action, Plaintiff challenges the following employment decisions of the Highway Patrol: (1) the April 2009 denial of his hardship transfer request; (2) the April 2009 selection of a Zanesville Post Commander; (3) his June 2009 demotion; (4) the February 2010 selection of a Cambridge Post Commander; (5) the February 2011 selection of a Lieutenant in the Criminal Investigation Unit; and (6) the July 2011 selection of a Cambridge Post Commander.

### A. Highway Patrol Structure, Promotions, and Transfers

The Highway Patrol maintains posts throughout the State of Ohio, and each post generally has a Post Commander who holds the rank of Lieutenant. The post will also usually have approximately four Sergeants and more than ten Troopers, in addition to other support staff. Posts are contained within districts; the districts have a District Commander, who holds the rank of Captain, and two Staff Lieutenants. The Captain and Staff Lieutenants are supervisors of the Lieutenants/Post Commanders, who in turn supervise the Sergeants at their post.

Troopers, Sergeants, and Lieutenants seeking promotion follow a rigorous three tier eligibility process. The promotional candidate first takes a written promotional exam. If the candidate achieves a sufficient score, he or she then advances to the second tier assessment at the Highway Patrol Assessment Center. There, the candidate is scored on a series of roleplaying problems intended to recreate "a day in the life of" a Sergeant or Lieutenant. If a satisfactory score is obtained at the Assessment Center, the candidate is then placed on the promotional eligibility list and he or she submits geographical preferences. The third tier involves a candidate taking the necessary steps to remain on the promotion eligibility list.

There is an additional component in the selection of Sergeants for promotion to the rank of Lieutenant. These promotions re-

quire the Captain/District Commander for the district of the eligible officer to complete a Commander's Evaluation. These evaluations are completed approximately twice a year. The Captain, with input from Staff Lieutenants and Lieutenants in the district, rates the candidate on a scale of 1 to 5 in ten different performance dimensions: (1) problem solving skills; (2) decision making skills; (3) written communication skills; (4) verbal communication skills; (5) administrative skills; (6) team skills; (7) interpersonal skills; (8) leadership skills; (9) motivational skills; and (10) operational effectiveness. There is also a "Comments" section where the Captain should include a narrative discussing the officer's job performance and readiness for promotion.

The Highway Patrol maintains a "Promotion Board" to review the candidacy of eligible individuals and make recommendations for promotions to vacancies for supervisory positions. The Promotion Board has generally consisted of the Highway Patrol's senior staff, including members of the rank of Major and Lieutenant–Colonel. The Colonel, who serves as Superintendent of the Highway Patrol, makes the final decision on promotions.

Troopers and Sergeants seeking a transfer engage in a process that is governed by specific contractual terms set forth in collective bargaining agreements. (Superintendent John Born's Dep. at 38; ECF No. 46.) Transfers or "hardship transfers [1]" for supervisors with the rank of Lieutenant or higher are not governed by a collective bargaining agreement, and are within the discretion of the Highway Patrol Superintendent, with input from the Human Resources Department ("HR"). (Bom Dep. at 38.) The normal process for hardship request transfers is submission of a request to the HR Office of Training Se-

lection Standards. That office reviews the request and makes a recommendation to the Superintendent or the Assistant Superintendent.

## B. Plaintiff's Promotion, Request for a Hardship Transfer, and Demotion

Plaintiff engaged in the proper promotion procedures and in April 2002 became eligible for promotion to Lieutenant. Plaintiff remained on the promotional eligibility list for promotion to Lieutenant for the next six years, but was not selected for promotion. In October 2008, Plaintiff added the Van Wert Post to his geographical preferences, because Staff Lieutenant Bob Dunn from the Findlay District, which includes the Van Wert Post, contacted him about a Lieutenant position opening. Plaintiff and Staff Lieutenant Dunn had been friends since the 1980's, when Plaintiff worked for the Kirkersville Police Department and Dunn was a relatively new Ohio Highway Patrol Trooper.

Plaintiff applied for the Van Wert Post Commander position. In his Commander's Evaluation from July 2008, Plaintiff had been given one score of "4" and nine scores of "3" in the ten performance dimensions. The Promotion Board recommended Plaintiff for the position and the recommendation was accepted. Plaintiff was promoted to Lieutenant at the Van Wert Post and successfully completed his six month probation period on April 4, 2009.

While working at the Van Wert Post, Plaintiff rented a condominium in Kalida, Ohio, because the Post is between a two and three-hour drive from his home in New Concord, Ohio. Plaintiff's mother remained at his home in New Concord. Plaintiff called his mother regularly during

---

1. Although there is no formal Highway Patrol policy on hardship transfer requests, there is

a past practice of permitting officers to request this type of transfer.

this time and on April 2, 2009, she was unable to speak when he called. He telephoned a neighbor who went to the house and discovered Plaintiff's mother had suffered a stroke.

On April 5, 2009, Plaintiff submitted a hardship transfer request to the HR Office of Training Selection Standards asking to be transferred to the Cambridge Post or the Zanesville Post so that he could be closer to his mother to help care for her. Plaintiff's mother required significant therapy after her stroke and Plaintiff knew he would be driving from the Van Wert Post to assist her. He requested and was granted leave under the Family Medical Leave Act during this time, but preferred to be in New Concord on a continual basis.

Captain of the Office of HR Management Kevin Teaford testified that he recalled Plaintiff's transfer request and that the recommendation from his office was to deny the request. (Captain Kevin Teaford's Dep. at 16.; ECF No. 47.) HR Major Daniel Kolcum, who has since promoted to Lieutenant Colonel, discussed Plaintiff's hardship transfer request with Superintendent Colonel Collins, who had accepted the HR recommendation and denied the transfer request. (Lieutenant Colonel Daniel Kolcum's Dep. at 11; ECF No. 52.)

Although Plaintiff avers that at some point in time Lieutenant Colonel Kolcum had informed him that his hardship transfer request would be discussed at the April 24, 2009 Promotion Board meeting, it is uncontroverted that the transfer was not discussed at that meeting. Instead, the decision to deny Plaintiff's hardship transfer occurred before the meeting. Plaintiff avers that he was informed of the denial on approximately April 17, 2009, by Sergeant Raymond Haas. (Pl.'s Aff. ¶ 12.) On

April 24, 2009, the Highway Patrol officially announced the denial of Plaintiff's hardship transfer request. (Pl.'s Aff. ¶ 17.) Plaintiff testified that the District Commander of the Findlay District, Captain David Gillespie, informed him of the official announcement of the denial. (Pl.'s Dep. at 108; ECF No. 41.) Plaintiff testified that he asked Captain Gillespie what options were available to Plaintiff so that he could move closer to his mother and the Captain informed him that he would look into the issue and get back with him.

Plaintiff and Captain Gillespie spoke on several occasions and on May 27, 2009, they met and Plaintiff informed him that he still strongly desired to move closer to his mother. On June 1, 2009, Captain Gillespie, Captain Robert Markowski, and Lieutenant Colonel Kolcum met with Plaintiff and informed him "that they were creating [a] fifth sergeant position at Cambridge" so that Plaintiff could relocate. (Pl.'s Dep. at 112.) On June 9, 2009, Plaintiff accepted the demotion and moved to the Cambridge Post as a Sergeant.[2]

## C. Alleged Discrimination

The Promotion Board met on April 24, 2009, to consider twelve eligible candidates for the Lieutenant position at the Zanesville Post. Ten of the candidates were Sergeants and two, Plaintiff and Steven Rine, were Lieutenants. The Promotion Board recommended Sergeant Chad Neal as the best candidate for the position and Colonel Collins adopted that recommendation. Lieutenant Neal is an African American, while Plaintiff is Caucasian.

In February 2010, a Lieutenant position came available at the Cambridge Post. Plaintiff was one of the six eligible Sergeants who were considered for the posi-

---

**2.** In Plaintiff's administrative charges, he alleges that he accepted the demotion on June 7, 2010. Yet throughout his briefing, and in

the complaint and amended complaint filed in this case, he alleges that he accepted the demotion on June 9, 2010.

tion. Sergeant Nakia Hendrix, an African American, was chosen.

## D. Administrative Complaints of Discrimination

On March 14, 2010, Plaintiff completed an Equal Employment Opportunity Commission ("EEOC") "Intake Questionnaire," alleging that the June 2009 demotion constituted unlawful discrimination under the association clause of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*

On May 10, 2010, Plaintiff filed a Charge of Discrimination with the EEOC alleging disability discrimination due to his association with a person with a disability. Plaintiff claimed that he was denied the accommodation of granting his hardship transfer and was required to take a demotion to transfer closer to his mother, even though a Lieutenant position was open. He also alleged that he was denied the February 19, 2010 promotion to the Cambridge Post Lieutenant position based on disability discrimination.

On October 23, 2010, Plaintiff amended his May 2010 Charge of Discrimination to include race discrimination.

## E. Alleged Retaliation and Administrative Complaints of Retaliation

In February 2011, Plaintiff applied for the Southeast Criminal Patrol Lieutenant position at the Cambridge and Jackson District Headquarters. Plaintiff was not selected for this position.

In July 2011, Plaintiff applied for the next available open Lieutenant position in his preferred area, this one at the Cambridge Post. Plaintiff was not selected for this position.

On January 12, 2012, Plaintiff received disciplinary action for not properly supervising a subordinate in proper storage of evidence. Plaintiff was on vacation at the time the incident occurred. Plaintiff avers

that he was not permitted to appeal this disciplinary action.

On June 18, 2012, Plaintiff filed a charge with the EEOC, in which he alleged retaliation for the denial of the last two promotional opportunities and the 2012 discipline.

## F. March 2013 Lieutenant Position at the Cambridge Post

The next open Lieutenant position in Plaintiff's preferred geographic area became available in March 2013. That position was for a Criminal Patrol Lieutenant in Cambridge. On March 13, 2013, Defendants selected another applicant over Plaintiff for the position. Lieutenant Colonel Kolcum was the chairperson of the Promotion Board that considered the applicants for the position. On March 21, 2013, Plaintiff filed a third charge with the EEOC alleging that Defendants retaliated against him by not selecting him for this position.

On March 29, 2013, Plaintiff's counsel deposed Lieutenant Colonel Kolcum. During that deposition, Plaintiff's counsel asked questions about the March 13, 2013 selection of the Cambridge Post Criminal Patrol Lieutenant. Defense counsel objected on relevancy grounds and instructed Kolcum not to answer the questions.

On April 4, 2013, Plaintiff asked the Court to compel Defendants to reconvene the deposition of Lieutenant Colonel Kolcum and for sanctions. (ECF No. 34.) On the same day, Plaintiff moved for an extension of time to complete discovery and to file an amended complaint to include a claim of retaliation for denial of the 2013 Lieutenant position at the Cambridge Post. (ECF No. 35.) Magistrate Judge Elizabeth Preston Deavers granted in part and denied in part Plaintiff's motion to compel and for sanctions and denied Plaintiff's request for an extension of time to

complete discovery and file an amended complaint. (ECF No. 53.) Magistrate Judge Deavers ordered the deposition of Lieutenant Colonel Kolcum to be reconvened so that he could answer questions regarding the 2013 promotion and for Defendants to bear the expenses for the reconvened deposition, including any attorneys' fees and court reporter costs.

Defendants filed an Objection to the Magistrate Judge's decision. (ECF No. 56.) That Objection is ripe for review by this Court. (ECF Nos. 58, 62.)

On October 17, 2013, Plaintiff filed a civil action in this District related to the alleged retaliatory denial of the March 2013 promotion: *David Van Buren v. Ohio Department of Public Safety*, 2:13–cv–1038. That case was reassigned to this Court's docket as a case related to the instant action.

## II.

### A. Standard

This Court reviews an objection to a magistrate's judge's decision on a nondispositive motion under 28 U.S.C. § 636(b)(1)(A). Under that statute, the district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. *See id.;* Fed.R.Civ.P. 72(a); *Vogel v. U.S. Office Prod. Co.,* 258 F.3d 509, 515 (6th Cir.2001).

### B. Objection

■ Defendants object to the Magistrate Judge's decision on two grounds. First, they argue that the decision is not in accordance with the Federal Rules of Civil Procedure because Rule 37(a) required Plaintiff's counsel to attempt to informally resolve the dispute prior to filing a motion for sanctions, which he did not do. Defendants are correct that an attempt at informal resolution is required before a court may order "the party or attorney advising that conduct, or both to pay the movant's reasonable *expenses incurred in making the motion* [to compel], including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A) (emphasis added). However, Judge Deavers declined to grant Plaintiff's request for "reasonable *expenses incurred in making the motion*" to compel stating: "The Court, however, concludes that the circumstances presented here do not warrant reimbursement of Plaintiff's costs in bringing the instant Motion [to Compel]." (Discovery Opinion and Order at 5; ECF No. 53.)

■ Instead, Magistrate Judge Deavers made clear that she was sanctioning Defendants "[b]ecause Defense counsel terminated [Lieutenant Colonel Kolcum's] deposition without a legitimate basis[.]" *Id.* She correctly reasoned:

The Court agrees with Plaintiff that Defense counsel wrongfully instructed Lt. Col. Kolcum not to answer questions relating to the March 22, 2013 promotion decision. Contrary to Defense counsel's assertion, Rule 30(d)(3) did not permit him to instruct a witness not to answer on relevancy grounds. Rather, Rule 30(d)(3) permits a party to move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed.R.Civ.P. 30(d)(3). Defense counsel did not move under Rule 30(d)(3). Moreover, the Court finds that Plaintiff's counsel's inquiry in to the circumstances surrounding the March 22, 2013 promotion decision was reasonably calculated to lead to the discovery of evidence bearing on the issue of pretext. *See Lewis v. ACB Bus. Serv., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) (Federal Rule of Civil Procedure 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence.");

*Griffin v. Finkbeiner,* 689 F.3d 584, 599 (6th Cir.2012) (acknowledging that under certain circumstances evidence of other acts "can provide probative context to an individual employment decision").

*Id.* at 45. Although the decision does not refer to the subsection specifically, Rule 30 permits a court to impose sanctions for the type of conduct at issue here without a certification that attempts at informal resolution failed:

(1) Duration ... The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

(2) Sanction. The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

Fed.R.Civ.P. 30(d)(1) and (2).

As to Defendants' second objection, they argue that "Defense counsel did not terminate the deposition and instead properly objected to the question(s) as discovery for a separate lawsuit that had been threatened but not filed." (Def.'s Objection at 9–10; ECF No. 56.) Defendants request that, because the evidence obtained at the second deposition of Lieutenant Colonel Kolcum is not relevant to this action, it "should not be admitted as evidence of any discrimination in this case. Plaintiff has not even articulated the basis for this new claim, except for a conclusory claim of "retaliation.' " *Id.* at 12. Defendants' arguments are not well taken.

Defendants contend that they should not be held accountable for the instruction to Lieutenant Colonel Kolcum because Plaintiff's counsel conceded that the questioning was related to a not-yet-filed lawsuit. Defendants rely upon the following statement

of Plaintiff's counsel: "I'm just thinking about whether I should call the judge or not. I don't know whether it's necessary, since there will be a new suit on that and I'll get his testimony on that later." (Lieutenant Colonel Daniel Kolcum's Dep. Vol. II at 21; ECF No. 64.) However, after Plaintiff's counsel made this statement, she specifically lodged an objection on the record to Defense counsel's instruction:

Let me just put on the record as far as the instruction not to answer, I disagree with that as far as being outside the scope of this lawsuit, that there is a pattern and practice of retaliation and this is part of that pattern and practice, and it is relevant to show pattern and practice.

*Id.* at 22. Defendants' reliance on Plaintiff's counsel's speculation about whether to call this Court for intervention during the deposition does nothing to change Judge Deaver's conclusion that Defense counsel improperly ordered Lieutenant Colonel Kolcum not to answer based on a relevancy objection.

As to Defendants' other arguments regarding the relevancy of the 2013 promotion denial, they were made to and addressed by Magistrate Judge Deavers. She carefully considered all of Defendants' arguments the he has reiterated in his Objection and issued a well-reasoned decision, concluding that testimony regarding the 2013 promotion denial was reasonably likely to lead to the discovery of admissible evidence in the instant action.

The Court finds that, for the reasons stated herein and those articulated in her decision, Magistrate Judge Deavers' Opinion and Order is not clearly erroneous or contrary to law. Accordingly, the Court **OVERRULES** Defendants' Objection to the Magistrate Judge's Discovery Order.

## III.

On December 14, 2011, Plaintiff filed this action. In his amended complaint, he alleges reverse race discrimination, retaliation, and discrimination based on his association with an individual with a disability. Plaintiff has since withdrawn his claims of disability discrimination.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that parry's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, a central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

## IV.

■■■ Plaintiff brings his reverse racial discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Ohio Revised Code Chapter 4112. The Court shall consider Plaintiff's "federal and state-law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law." *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir.2003) (citing *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 630 N.E.2d 669 (Ohio 1994)). To establish a Title VII employment discrimination claim, Plaintiff is "required to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.' " *Id.* at 272–73 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003)). Where, as here, a plaintiff fails to present direct evidence of discrimination, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), applies. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000).

■■■ Under that analysis, a plaintiff must first set forth a *prima facie* case of discrimination by showing

"(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class.... [t]he fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably."

*Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir.2002) (alterations in original) (quoting *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995)). Further, "[i]n adapting the test to cases of reverse discrimination, the Sixth Circuit has held that, under the first prong, plaintiff must demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 255 (6th Cir.2002) (citations omitted). Once a plaintiff makes out a *prima facie* case, a defendant may offer any legitimate, nondiscriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff. *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

In the instant action, Plaintiff alleges that Defendants discriminated against him when they denied his hardship transfer request, promoted Sergeant Neal to the Lieutenant Position at the Zanesville Post, and offered him a Sergeant position, instead of a Lieutenant position, in order to transfer closer to his mother. Plaintiff further alleges that Defendants discriminated against him when they selected Sergeant Hendrix for the Lieutenant position at the Cambridge Post. Defendants moves for summary judgment on Plaintiff's claims, asserting that the claims related to the Zanesville Lieutenant position are untimely and that, even if they were timely they, as well as Plaintiff's claims related to the Cambridge Lieutenant position, fail under the *McDonnell Douglas* burden shifting analysis.

**1. Administrative Exhaustion/Timeliness**

■■ Title VII's charge filing provision, 42 U.S.C. § 2000e–5(e)(1), "'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). "An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *Id.* In a state like Ohio that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice. *See id.* "A claim is time barred if it is not filed within this time limit." *Id.* That is, filing a timely charge with the EEOC is a prerequisite to filing an action in federal court. *Young v. DaimlerChrysler Corp.,* 52 Fed.Appx. 637, 639 (6th Cir. 2002) (citing, *inter alia,* 42 U.S.C. § 2000e–5(e)). "The purpose of the filing requirement is to trigger an investigation, which gives notice of potential liability to an alleged wrongdoer and permits the EEOC to initiate conciliatory procedures in an attempt to avoid litigation in federal court." *Id.* (citation omitted).

In the present case, it is uncontroverted that on April 24, 2009, Defendants officially denied Plaintiff's hardship transfer re-

quest, and Defendants chose Sergeant Neal for the Lieutenant position at the Zanesville Post. (Pl.'s Aff. ¶ 17.) Plaintiff's first Charge of Discrimination was filed on May 12, 2010, which is 383 days after these employment actions. Therefore, Defendants contend that the claims are untimely.

Plaintiff, however, avers that on March 14, 2010, he "completed and forwarded a questionnaire to the EEOC alleging discrimination on the basis of the [Americans with Disabilities Act] association clause." (Pl.'s Aff. ¶ 30, Ex. 2; ECF Nos. 63–3, 63–4.) Plaintiff contends that the Intake Questionnaire constitutes a charge of discrimination for exhaustion purposes. Plaintiff is correct that the Questionnaire can be considered a charge if it meets certain requirements. *See Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 509 (6th Cir.2011) (setting forth requirements). Further, "[a] charge may be amended to cure technical defects or omissions." *Id.* (citing 29 C.F.R. § 1601.12(b)). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12.

Defendants point out that even if the Intake Questionnaire qualifies as a "charge" for exhaustion purposes, the Questionnaire was completed and forwarded to the EEOC on March 14, 2010, which is 324 days after the April 24, 2009 date upon which Plaintiff's hardship request was officially denied and Sergeant Neal was selected for the Zanesville Post posi-

tion. Therefore, Defendants maintain, these claims are still untimely. In response, Plaintiff contends that the proper date upon which the time period began to run was not April 24, 2009, but instead was June 9, 2009, the date that he accepted a demotion so that he could transfer to the Zanesville Post.

To support his assertion, Plaintiff relies upon his deposition testimony in which he stated that, although Sergeant Neal was selected for the Zanesville Lieutenant position and his transfer request was denied on April 24, 2009, he was told that there may be other vacancies available for his transfer. Specifically, Plaintiff testified that he was told by Captain Gillespie that there was still a possibility of transferring, whether it be by an alternative position coming available or Defendants creating a new position for him. Plaintiff claims that the April 24, 2009 employment actions therefore continued until he accepted the demotion to the Sergeant position Defendants offered to create for him at the Cambridge Post. Plaintiff thus concludes that the 300–day period began to run on June 9, 2009, the date he accepted a demotion. Utilizing that date would result in the charges being filed 278 days after Plaintiff mailed the Intake Questionnaire.[3]

Defendants disagree with Plaintiff's assessment and assert that for the purposes of exhaustion, the transfer denial/demotion and the promotion of Sergeant Neal are discrete acts that must each be charged and filed within the appropriate time period. Defendants rely on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), in which the Supreme Court explained:

---

**3.** If the Court were to accept that the violation was a continuing one, the date upon which the exhaustion period would begin to run would be June 1, 2009, the date Plaintiff was told that demotion was the only way to transfer—not June 9, 2009, the date he ac-

cepted the demotion offer. This difference, however, would not change the fact that if the violation were a continuing one, and the Intake Questionnaire constitutes a charge of discrimination, Plaintiff filed the charge within the 300–day limitation period.

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are · easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred" within the· appropriate time period. While [Plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable.

Defendants conclude that the selection of Sergeant Neal for the Zanesville Post Lieutenant position was a discrete act that occurred on April 24, 2009. Because Plaintiff failed to file a charge with the EEOC about that employment action within 300 days, he did not exhaust his administrative remedies as to it. This Court agrees.

Yet, even if Plaintiff had timely filed an EEOC charge with regard to the Zanesville Post Lieutenant position, it would still fail because that claim cannot survive Defendants' summary judgment motion.

### 2. Discrimination

█ Plaintiff alleges that Defendants engaged in reverse race discrimination when it selected Sergeant Neal for the Lieutenant position at the Zanesville Post and when it selected Sergeant Hendrix for the Lieutenant position at the Cambridge Post. Assuming *arguendo* that Plaintiff can set forth a *prima facie* case of race discrimination, Defendants have offered legitimate nondiscriminatory reasons for their actions and Plaintiff has failed to show that these reasons are a pretext for discrimination.

Specifically, Defendants indicate that they promoted Sergeants Neal and Hendrix because they were the best qualified for the particular positions for which they were chosen. This is a legitimate, nondiscriminatory reason. "It is important to note that the defendant need not *prove* a nondiscriminatory reason for not promoting [Plaintiff], but need merely *articulate* a valid rationale." *Hartsel,* 87 F.3d at 800 (emphasis in original) (citing *Hicks,* 509 U.S. at 514, 113 S.Ct. 2742).

█ Because Defendants have articulated a valid rationale, the burden shifts to Plaintiff to show that Defendants' proffered reason for not selecting him for promotion was a pretext for unlawful discrimination. The Sixth Circuit has stated that a plaintiff may show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir.2009) (citing *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir.2004)); *see also Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994), overruled in non-relevant part by *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Sixth Circuit, however, has noted that "it is important to avoid formalism in [the pretext analysis], lest one lose the forest for the trees." *Chen,* 580 F.3d at 402, n. 4. "Pretext is a commonsense inquiry: did the employer [take the adverse employment action against] the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* ("at bottom the question is always whether the employer made up its stated

reason to conceal intentional discrimination"). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Id.*

In the case *sub judice*, Plaintiff and Defendants disagree as to who was the best qualified applicant for the Lieutenant positions at issue. Defendants, however, argue that they honestly believed that Sergeants Neal and Hendrix were the best qualified for the positions and, therefore, their decisions cannot be a pretext unless Plaintiff shows that Defendants did not reasonably rely on the particularized facts that were before them when they made the promotion decisions. This Court agrees.

The Sixth Circuit directs that, a plaintiff "must allege more than a dispute over the facts upon which [the adverse actions were] based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001) (citations omitted). The *Braithwaite* court explained:

> In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *See Smith*, 155 F.3d at 807. In *Smith v. Chrysler*, this Court provided some guidance in determining whether reasonable reliance was present. We stated:
>
> > In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key

> inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> *Id*
>
> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Id.* at 494.

In the present action, in addition to the challenging three tier promotion procedures Plaintiff and Sergeants Neal and Hendrix successfully completed, all three candidates all had clean disciplinary records. While Plaintiff was a Lieutenant and Neal and Hendrix were Sergeants, Plaintiff's promotion to Lieutenant was at a Post where "there were a very limited number of candidates ... that were willing to go" and the Post was "smaller" and "slower" than the Cambridge Post and the Zanesville Post. (Born Dep. at 1516, 22.) It is undisputed that Plaintiff was eligible for promotion for six years, receiving no promotion in the Zanesville or Cambridge areas, before he was awarded the Van Wert Lieutenant position. The positions at the Cambridge Post and the Zanesville Post were sought after by several more, and more highly qualified, candidates than had applied to the Van Wert Post Lieutenant position.

Defendants further provide the following evidence of why Sergeants Neal and Hendrix stood out as the best candidates for the positions at issue. With regard to the Zanesville Post, at the time of his selection, Sergeant Neal worked in the Highway Patrol's Administrative Investigative Unit ("AIU"), which is the internal affairs

unit. In addition to serving as a Trooper in the Toledo area, Chillicothe, and Circleville, Neal had served as an Instructor at the Highway Patrol's Academy. In 2002, Neal was transferred to an 80–day temporary assignment in AIU and was then promoted to Sergeant at the Athens Post in April 2002. He returned to the Chillicothe Post as a Sergeant in 2003, and then was transferred to a position as a Sergeant in AIU in April 2005. In light of his superior performance, Neal was encouraged by his supervisors at AIU. Captain Teaford and Staff Lieutenants Maria Gaskill and John Allard, to apply for the promotion to Lieutenant at the Zanesville Post.

In his Commander's Evaluation from April 1, 2009, Sergeant Neal received scores of 5 in four of the ten performance dimensions, and scores of 4 in the other performance dimensions. Captain Teaford advocated on behalf of Neal, speaking with Lieutenant Colonel Kolcum, a member of the Promotion Board. Sergeant Neal also knew George Williams, who at that time was Captain and District Commander of the Cambridge District, of which the Zanesville Post was part. Neal had known Captain Williams since the two were Troopers in northwest Ohio. Captain Williams supported Neal and another candidate, Sergeant Darrin Blosser, for the Zanesville Lieutenant position. Captain Williams particularly believed that Neal was an exceptional choice because of, *inter alia,* difficult issues that had arisen at the Zanesville Post over the previous year. Specifically, a Sergeant and Dispatcher at the Post were allegedly having a sexual relationship on work property, and the Zanesville Post Commander had been discovered to be using his work computer to view pornography, leading to his resignation. Captain Williams had also observed a lack of discipline in general at the Zanesville Post, and wanted someone "in there that had a backbone, number one, to hold

people accountable, number two, take care of the underlying issues that were there at the facility." (Captain George Williams' Dep. at 23; ECF No. 44.) Williams had reports from Sergeant Neal's superior officers that Neal was "outstanding" at "holding people accountable." *Id.*

For the position of Cambridge Post Commander that was filled in February 2010, Sergeant Hendrix had a strong recommendation from the Commander of his District, Captain Holt. While he was a Trooper, Hendrix was also assigned as an instructor at the Highway Patrol Academy for over two years. He was promoted to the rank of Sergeant at the Ashtabula Post in 2005. In 2007, Hendrix was transferred to the Hiram Post as a Sergeant, and then transferred to the Canfield Post. Captain Holt found Hendrix to exemplify the Highway Patrol's core values, to be extremely intelligent, and a leader by example. In his Commander's Evaluation from October 2009, Hendrix received scores of 4 in six of the ten performance dimensions, and scores of 3 in the other dimensions. Superintendent Bom, then a Major on the Promotions Board, remembered that Hendrix was a strong candidate for promotion, who had previously been considered for other promotions. Bom also recalled that Hendrix's District Commander "was extremely complimentary" of Hendrix as a candidate for promotion and described him as "a high performer, high capacity, strong integrity." (Born Dep. at 44–45).

■ The Court finds that the Promotion Board's reliance on the above-articulated particularized facts shows that it made a "reasonably informed and considered decision" when it selected Sergeants Neal and Hendrix for the positions at the Zanesville and Cambridge Posts, which demonstrates an "honest belief" that each was the best qualified candidate for the positions. *Braithwaite,* 258 F.3d at 494.

The Court notes that this is not a case, as Plaintiff claims, where there is "other evidence" of discrimination that would call the previous facts into question. In this circuit "evidence of comparative qualifications 'may be probative' of pretext" only when a plaintiff presents other evidence of discrimination. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir.2006) ("Of course, acknowledging that evidence of comparative qualifications 'may be probative' of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive."). The *Bender* court explained:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment.

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual. This standard accords with several of our sister courts'

standards . . . and is consistent with our own precedents[.]

*Id.* at 626–27 (internal citations omitted).

Plaintiff submits as "other probative evidence" of discrimination his and former Staff Lieutenant Dunn's affidavits, which Plaintiff believes offer "considerable objective evidence that Plaintiff was better qualified than the persons selected for the" Zanesville Post and Cambridge Post positions. (Pl.'s Mem. in Opp. at 33; ECF No. 63.) He also relies on "a long list of evidence that could establish retaliation." *Id.* Plaintiff's submissions, however, fall far short of constituting other probative evidence of discrimination. That is, evidence that Plaintiff was retaliated against for engaging in a protected activity is not other probative evidence of reverse racial discrimination. Neither does Plaintiff's and former Staff Lieutenant Dunn's belief that Plaintiff was more qualified than Sergeants Neal and Hendrix constitute other probative evidence of discrimination—but instead it is simply qualification evidence.

Because there is no other probative evidence of discrimination, Plaintiff's qualifications must be so significantly better than the successful applicants' qualifications that no reasonable employer would have chosen the latter applicant over the former. In reviewing these qualifications, Plaintiff and Sergeants Neal and Hendrix met the rigorous requirements of the tiered promotion process so that they were placed on the promotion list. All three had the recommendation and support of some of their superiors, with Sergeants Hendrix and Neal having more support than Plaintiff. Sergeant Neal was specifically found to be the most appropriately qualified for the environment at the Zanesville Post because he had experience in internal affairs and the Zanesville Post had just experienced serious internal affairs issues. And, with regard to the Cam-

bridge Post, Captain Williams had been approached by two of its Sergeants who expressed their concerns at the prospect of Plaintiff promoting there, one indicating that he might retire and the other that he might request transfer if Plaintiff were selected. (Williams' Dep. at 68–70.) Plaintiff, Neal, and Hendrix all three had outstanding records of integrity with no disciplinary actions in their record. Plaintiff possessed more experience as a Lieutenant, having been one for six months. However, it is uncontroverted that the Van Wert Post was not as busy as the Zanesville Post or the Cambridge Post and that it was less desirable, Defendants finding very few Sergeants who were interested in promoting to it. And, finally, the Commander's Evaluations were significantly higher for Sergeants Neal and Hendrix than they were for Plaintiff.

██ An employer may rely upon subjective evaluations like the Commander's Evaluations when making promotion decisions, and it is not the province of this Court to question the use of such factors. *See Browning v. Dept. of the Army*, 436 F.3d 692, 698 (6th Cir.2006) ("Questioning the Army's hiring criteria is not within the province of this court, even if the Army's hiring process was entirely subjective."). But the Sixth Circuit has also cautioned that such "subjective evaluation processes intended to recognize merit provide ready mechanisms for discrimination." *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir.1983). The "ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Id.*

Here, Plaintiff suggests that the Commander's Evaluations were used to disguise discriminatory action because the evaluations of Sergeants Neal and Hendrix were "particularly high" and Hendrix's were "changed" prior to his promotion. With regard to the first

suggestion, Plaintiff avers that he reviewed numerous evaluations that were produced in this case and he "is aware of a handful of white officers who received a Commander's Evaluation rating of 5, and that was in one category only." (Pl.'s Mem. in Opp. at 16) (citing Pl.'s Aff. ¶ 16). Plaintiff provides no records to support his conclusion; no evidence or argument related to the handful of Caucasian individuals who allegedly received the higher evaluations; no evidence or argument related to the individuals who allegedly received lower evaluations; no evidence or argument related to the rank of these comparators; no evidence or argument regarding the Commanding Officers who completed the evaluations; and no evidence or argument regarding the years the evaluations were completed. In short, Plaintiff does not cite to any evidence or make any valid or reliable comparison between Commander Evaluations of African Americans and Caucasians. Consequently, Plaintiff has failed to raise any genuine issue of material fact as to whether this perceived disparity was utilized to disguise Defendants' discrimination against Caucasians.

As to Plaintiff's claim that Sergeant Hendrix's Commander's Evaluation was inappropriately changed, he asserts that in December 2009 the Evaluation reflected all 3s and 4s and that Colonel Watts testified that the Evaluations at the time Hendrix was promoted in February 2010 included one 3 and the rest of the scores were 4s and 5s. (Pl. Mem. in Opposition at 16.) Even if this were true, it does not show that Sergeant Hendrix's Commander's Evaluation was altered in some way. The evidence shows that these Evaluations were completed twice per year. There is no evidence that Sergeant Hendrix had not performed better during the second evaluation period than the first. Indeed, there

is no evidence of whether the same Commander evaluated Sergeant Hendrix or whether he was evaluated by a different Commander who believed Hendrix deserved higher ratings. Finally, regardless of which evaluation score the Promotion Board relied upon, if there were in fact two different ones, both were undisputedly higher than Plaintiff's.

When viewing the evidence in the light most favorable to Plaintiff, the Court concludes that, while Plaintiff was a qualified applicant for both the Zanesville Post and the Cambridge Post positions, his qualifications are not so significantly better than the successful applicants' qualifications that no reasonable employer would have chosen Sergeants Neal and Hendrix over him. Evidence that Plaintiff was as qualified, or even marginally more qualified, than the successful candidates is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, nondiscriminatory rationale was pretextual. *Bender,* 455 F.3d at 626. Plaintiff has failed to produce evidence from which a jury could reasonably doubt Defendants' explanation of why they chose other candidates over him for the Zanesville Post and Cambridge Post positions, *i.e.,* that Defendants "made up [their] stated reason to conceal intentional discrimination." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Therefore, Defendants were "free to choose among [the] qualified candidates" *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir.1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates."). This Court is not permitted to act as a " 'super-personnel department,' overseeing and second-guessing [the Highway Patrol's] business decisions." *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 816 (6th Cir.2011).

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's claims of reverse racial discrimination.

## V.

Plaintiff alleges that he was retaliated against when he was denied the following promotions: (1) the February 2010 Lieutenant position at the Cambridge Post; (2) the February 2011 Southeast Criminal Patrol Lieutenant position; and (3) the July 2011 Lieutenant position at the Cambridge Post. Plaintiff also alleges that he was retaliatorily disciplined in January 2012, which Defendants do not address in their summary judgment motion.

The Court analyzes Plaintiff's federal and state retaliation claims under a Title VII analysis because the Ohio Civil Rights Act mirrors Title VII in all relevant respects with regard to these claims. *Lindsey v. Whirlpool Corp.,* 295 Fed.Appx. 758, 760 n. 1 (6th Cir.2008) (citing Ohio Rev. Code § 4112; *Russell v. Univ. of Toledo,* 537 F.3d 596, 604 (6th Cir.2008); *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 332 (6th Cir.2008); *Staunch v. Continental Airlines, Inc.,* 511 F.3d 625, 631 (6th Cir. 2008)). Plaintiff asserts that he has presented both direct and circumstantial evidence of retaliation.

### 1. Circumstantial Evidence

In a retaliation claim based upon circumstantial evidence, the Court utilizes the familiar *McDonnell Douglas* burden shifting framework set forth *supra.* In order to establish a *prima facie* case of retaliation under Title VII, an employee must establish that (1) he engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between

the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

Furthermore, the United States Supreme Court recently clarified that a Title VII plaintiff must demonstrate 'but for' causation to sustain a retaliation claim.

Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, — U.S. ——, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). *Nicholson v. City of Clarksville, Tenn.*, 530 Fed.Appx. 434, 446–47 (6th Cir.2013).

Defendants argue that Plaintiff cannot meet any of the elements of his *prima facie* case with regard to the February 2010 selection of a Lieutenant for the Cambridge Post. This Court agrees. It is uncontroverted that Plaintiff did not engage in any protected activity before at least March 2010. Thus, Plaintiff did not engage in a protected activity before the February 2010 employment action about which he complains. Consequently, Defendants are entitled to summary judgment on this claim.

Defendants move for summary judgment on the other two promotional opportunities under the fourth prong of the *prima facie* test. Defendants contend that Plaintiff's EEOC "charges from May 2010 and October 2010 were too remote in time from the promotion decisions to draw any inference from temporal proximity, and there is no other evidence that his EEOC filings were discussed, considered or otherwise factored in the promotion decisions

[Plaintiff] challenges." (Def.'s Mot. for Summ. J. at 2, 44.) Defendants' arguments are not well taken.

"A causal connection is established when a plaintiff proffers 'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 Fed.Appx. 685, 694 (6th Cir.2013) (citations omitted). " '[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.'" *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008)).

In the case at bar, four months elapsed between the date Plaintiff filed the October 2010 EEOC Charge and the date he was denied the Southeast Criminal Patrol Lieutenant position and nine month elapsed between the EEOC filing and the date Plaintiff was denied the Lieutenant position at the Cambridge Post. The Court notes that, as Plaintiff contends, the temporal proximity analysis is impacted in this action because the open positions for Lieutenant are not always available and Plaintiff applied for and was denied every open Lieutenant position in his geographical area from the time he engaged in protected conduct. That being said, the Court finds that Plaintiff has satisfied his burden of offering sufficient evidence, in addition to temporal proximity, of retaliatory motive in the evidence submitted regarding the comments of decisionmakers.

First, Captain Williams was on the Promotion Board that decided the promotions for which Plaintiff applied. Captain Williams testified that "When Sergeant Van Buren took the voluntary demotion to come back to Cambridge, he was basically sulking. Anybody who wanted to hear his

story about how he was wronged, he was expressing it to." (Williams' Dep. at 80–81.) While Captain Williams was not officially notified of Plaintiff s EEOC Charge at that time, he knew that Plaintiff was "telling people he filed something" and "complaining about how he was being wronged," and "going to the courts." (Williams' Dep. at 83–84.) After Williams heard about Plaintiff's complaints, he stated that Plaintiff "need[ed] to learn to keep his mouth shut, because nobody wants to hear poor me, poor me, poor me" *Id.* at 81. Captain Williams admits that his comment was directed to Plaintiff's complaints about the denial of his transfer and demotion. Captain Williams made this comment before Plaintiff was not selected for the promotions. Second, Plaintiff avers that he complained about retaliation to Colonel Bom, who responded "what do you want, a clean slate?" (Pl.'s Aff. ¶ 23.) Plaintiff had never been disciplined at that time and contends that this statement refers to cleaning his record of civil rights complaints.[4]

Defendants argue that these statements were not directed at Plaintiff's complaints about his civil rights, but instead were based on the fact that Plaintiff complained in inappropriate locations about the denial of his transfer, "whined" to whomever would listen, and had a constant "poor me" attitude. Thus, Defendants are, in essence, asking this Court to view the statements in the light most favorable to them, and to draw justifiable inferences in their favor. This the Court is not permitted to do. Instead, the evidence here presents

sufficient disagreement to require submission to a jury.

Viewing all of the above evidence in the light most favorable to Plaintiff, the Court finds that it is sufficient to raise the inference that Plaintiff's protected activity was a but-for cause of his non-selection for promotion. Accordingly, the Court concludes that Plaintiff has met his *prima facie* burden of retaliatory non-selection to the February 2011 Southeast Criminal Patrol Lieutenant position and the July 2011 Lieutenant position at the Cambridge Post.

■ Because Plaintiff has set forth a *prima facie* case of retaliation, Defendants must articulate a legitimate nonretaliatory reason for not selecting him for promotion. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir.1997). Defendants maintain that Plaintiff was not selected because he was not the best qualified applicant for the position, which is a legitimate nonretaliatory reason. Therefore, the burden shifts back to Plaintiff to show that the reason given is a pretext for illegal retaliation. *Id.*

■ Plaintiff offers as evidence of pretext, the statements addressed above that were made by Captain Williams and Colonel Born. He also offers his averment that Captain Williams informed him that he was not eligible for promotion for two years after a demotion. However, the uncontroverted evidence shows that in this same time period Lieutenant Hendrix accepted a demotion to move closer to his

---

4. Plaintiff offers other "comments" as support here, such as: "Lieutenant Pat Gehrish told Plaintiff before the Promotion Board meeting that Captain Gillespie told him that he 'knew who was not going to get it, VanBuren.'" (Pl.'s Mem. in Opp. at 18) (citing Pl.'s Aff. at ¶ 23). The Court is not prepared, without context, to decide whether or not such statement is inadmissible hearsay. *See Alpert*

*v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (" '[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence ... must be disregarded.' ") (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). At this juncture, the Court does not rely upon Lieutenant Gehrish's statement.

family and was promoted six months later to the first Lieutenant position open in his area. The two year waiting period is also not in accord with the 2011 Highway Patrol's Policy that required only a one year waiting period.

Additionally, as he did in the discrimination context, Plaintiff offers qualification evidence. And, as the Court found above, it finds here that Plaintiff generally possesses similar qualifications as did the successful applicants. In contrast to the earlier discussion in the discrimination, as opposed to retaliation context, Plaintiff here provides other probative evidence of retaliatory motive. That evidence, taken together with evidence of Plaintiff's qualifications (viewed in the light most favorable to him), results in Plaintiffs retaliation claims surviving summary judgment. *See Bender,* 455 F.3d at 626–27 ("In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment.").

█ Further, here there is no dispute that Plaintiff was *the most qualified* applicant for the 2013 Criminal Patrol Lieutenant position, which is the subject of the related lawsuit filed by Plaintiff on October 17, 2013, which is on this Court's docket. Lieutenant Colonel Kolcum testified that Plaintiff was the most qualified applicant "on paper" but that he was not promoted because he wore dirty shoes and pants to the interview and he lacked energy during the interview. (Kolcum's Dep. Vol. II at 71–74.). Plaintiff, however, testified that he wore brand new shoes that he shined before the interview and that his pants were not dirty. Moreover, an inference of retaliatory motive could be drawn from Defendants' repeated non-selection of Plaintiff for positions for which he was at

least minimally qualified and a position for which he was the most qualified. *See e.g., Lane v. Vasquez,* 961 F.Supp.2d 55 (D.D.C. 2013) (along with comments, the repeated non-selection for positions for which he was at least minimally qualified was sufficient "for a reasonable jury to discredit Defendant's proffered explanation as pretext"). This evidence, referred to by the parties as "other acts evidence" is certainly probative to the issue here. The Court notes, however, that this evidence is not technically "other acts evidence" which "consists of testimony or other evidence of [retaliation] by the employer against non-party employees." *Griffin v. Finkbeiner,* 689 F.3d 584, 598 (6th Cir.2012). In this case, the evidence consists of non-selection of Plaintiff—not a non-party employee. That being said, the relevance of this evidence, as with the more traditional "other acts evidence," is made on "a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* (quoting *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 388, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008)).

In conclusion, the Court finds that Plaintiff's proffered evidence is sufficient to "cast doubt" on Defendants' explanations, raising genuine issues of material fact as to whether Defendants' stated reason for not selecting Plaintiff for promotion was a pretext to conceal illegal retaliation. *See Chen,* 580 F.3d at 400, n. 4. That issue is appropriate for a jury, which may or may not find that Defendants retaliated against Plaintiff for engaging in a protected activity.

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment as it relates to Plaintiff's claims of retaliation for the denial of promotion to the February 2011 Southeast Criminal Patrol Lieu-

tenant position and the July 2011 Lieutenant position at the Cambridge Post.

### 2. Direct Evidence

■ Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a but-for cause of the employer's action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir.2003). "[D]irect evidence proves the existence of a fact without any inferences or presumptions." *Abbott*, 348 F.3d at 542 (citing *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir.1999)). Plaintiff asserts that the comments discussed above constitute direct evidence of retaliation.

■ "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's [retaliatory] intent." *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985). "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir.1997). Because the Court determines that Plaintiff's retaliation claims survive summary judgment utilizing circumstantial evidence, it need not address the parties' arguments related to direct evidence.

### VI.

Defendants move for dismissal of the Director of the Ohio Department of Public Safety Thomas Charles and Superintendent of the Ohio State Highway Patrol Colonel John Bom as defendants, arguing that neither was properly served with a summons, and regardless, Plaintiff does not assert any claims against them. Plaintiff does not respond to Defendants' contentions.

With regard to Defendants request to dismiss for failure to state a claim, they offer no legal support for their contention that these two defendants, sued in their individual and their official capacities, should be dismissed. Therefore, the Court declines to address this issue. *See* S.D. Ohio Civ. R. 7.2(a)(1) ("All Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon.").

■ However, due process requires service of process in order for a court to obtain *in personam* jurisdiction over an individual defendant. *Sawyer v. Lexington–Fayette Urban Cnty. Gov't*, 18 Fed. Appx. 285, 287 (6th Cir.2001) (citing *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir.1976)). For service to be effective, a plaintiff must serve a defendant within the time period set forth in Federal Rule of Civil Procedure 4(m), which provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court "on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

■ In this action, Plaintiff has failed to serve Director Charles or Colonel Born and he has offered no cause for his failure. Consequently, these defendants are properly dismissed for Plaintiff's failure to make timely service. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to dismissal of Director Charles and Superintendent Bom.

## VII.

For the reasons set forth above, the Court **OVERRULES** Defendants' Objection to the Magistrate Judge's Discovery Order (ECF No. 56), and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 57). Specifically, the Court:

1. **GRANTS** the motion as it relates to Plaintiff's claims of reverse racial discrimination;

2. **GRANTS** the motion as it relates to Plaintiff's claim that he was retaliated against when not selected for the Lieutenant position at the Cambridge Post in February 2010;

3. **GRANTS** the motion as it relates to the dismissal of Director Charles and Colonel Bom; and

4. **DENIES** the motion as it relates to Plaintiff's claims that he was retaliated against when not selected for the February 2011 Southeast Criminal Patrol Lieutenant position and the July 2011 Lieutenant position at the Cambridge Post.

**IT IS SO ORDERED.**